**FIFTH DIVISION**
**REESE, P. J.,**
**MARKLE and COLVIN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

*DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES.*

**June 29, 2020**

# In the Court of Appeals of Georgia

A20A0560. WIMPY v. MARTIN.

MARKLE, Judge.

Jimmy B. Martin sued Floyd Wimpy for unpaid profits he was allegedly owed under the parties' partnership agreements regarding two construction projects. Following a trial, the jury found in favor of Wimpy on the breach of contract claim, but awarded Martin damages on his claims for breach of fiduciary duty, punitive damages, and attorney fees. Wimpy now appeals, contending that the trial court erred in entering judgment in favor of Martin because (1) the claim for breach of fiduciary duty was (a) unsupported by the evidence in that it could not be brought as an independent tort separate from the breach of contract claim, and (b) barred by the economic loss rule; (2) the claim for punitive damages was barred because there was no predicate tort claim; and (3) the award of attorney fees was unsupported by the

evidence. For the following reasons, we affirm the judgment as to Martin's claims for breach of fiduciary duty and punitive damages, but reverse the award of attorney fees for lack of sufficient evidence.

"We must affirm a jury's verdict that has the approval of the trial court if there is any evidence to support it because the jurors are the sole and exclusive judges of the weight and credit given the evidence." (Citation and punctuation omitted.) *Hensley v. Henry*, 246 Ga. App. 417, 419 (1) (541 SE2d 398) (2000).

So viewed, the record shows that Wimpy, Martin, and Anne Vail entered into a written partnership agreement to perform work on a construction project in Ellijay, Georgia, from which they would each share equally in the losses and profits of the project.[1] By oral agreement, they extended the partnership to include an additional construction project in Fitzgerald, Georgia. Under the agreement, Vail would handle the bidding process and overall project management; Martin would provide the labor and manage the actual construction work for both projects; and Wimpy would manage the finances. Although Martin was ready and able to carry out his obligations under the partnership agreement, Wimpy refused to allow Martin's construction crew

---

[1] Vail also sued Wimpy for unpaid profits, but she is not a party to this appeal.

to do so and instead installed his own crew on the jobs. At the completion of the projects, Wimpy did not tender Martin's one-third share of the gross profits.

Martin sued Wimpy for the unpaid profits from the projects, asserting, as is relevant to this appeal, claims for breach of contract, breach of fiduciary duty, punitive damages, and attorney fees. During the first phase of a bifurcated trial, the jury entered a verdict in favor of Wimpy on the breach of contract claim, but in favor of Martin on the breach of fiduciary duty claim, and awarded him $196,566.06 in damages. The jury also found that Martin was entitled to punitive damages and attorney fees, pursuant to OCGA § 13-6-11. In the second phase of trial, the jury awarded Martin $90,000 in punitive damages, and $65,522.07 in attorney fees. The trial court entered judgment conforming to the verdict. This appeal followed.

1. Wimpy argues that the trial court erred in entering judgment on Martin's claim for breach of fiduciary duty because there was no evidence of a breach of any duty apart from those arising from the contracts, and the economic loss doctrine barred recovery on this claim. We disagree.

(a) Wimpy argues that the evidence was insufficient to support the independent tort of breach of fiduciary duty where the jury found there was no breach of contract. This argument is without merit.

As we have explained,

> [i]t is axiomatic that a single act or course of conduct may constitute not only a breach of contract but an independent tort as well, if in addition to violating a contract obligation it also violates a duty owed to plaintiff independent of contract to avoid harming him. But while a tort action cannot be based on the breach of a contractual duty only, it can be based on conduct which, in addition to breaching a duty imposed by contract, also breaches a duty imposed by law.

(Citations and punctuation omitted.) *Northwest Plaza, LLC (MI) v. Northeast Enterprises, Inc.*, 305 Ga. App. 182, 191-192 (3) (b) (699 SE2d 410) (2010); see also OCGA § 51-1-8 ("Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action."). And we have found claims for breach of fiduciary duty to be well pled even when they are derived from language in a contract. See *Tidikis v. Network for Med. Communications & Research LLC*, 274 Ga. App. 807, 810 (1) (619 SE2d 481) (2005) (breach of fiduciary duty claim survives where the existence of a confidential relationship between the contracting parties may be inferred from the contract); cf. *Spears v. Mack & Bernstein, P.C.*, 227 Ga. App. 743, 745 (2) (490 SE2d 463) (1997) (tort for breach of good faith and fair dealing survives where a fiduciary duty arises from partnership language in the contract). As such, we are

4

unpersuaded by Wimpy's premise that Martin's breach of fiduciary duty claim could not be brought as an independent tort.[2]

Turning to the sufficiency of the evidence, Martin's theory at trial was that the parties had established a partnership, and that Wimpy breached the duties arising from that relationship by refusing to share the profits flowing from the two projects.

To establish a tort claim for breach of fiduciary duty, a plaintiff must show "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." (Citation and punctuation omitted.) *Schinazi v. Eden*, 338 Ga. App. 793, 798 (3) (a) (792 SE2d 94) (2016). "Without question, partners owe a fiduciary duty to one another." (Citations and punctuation omitted.) *Id.* Thus, to satisfy the first element of his claim, Martin was required to prove the

---

[2] We note that Wimpy did not raise this issue before the trial court. However, because he couched this argument as a claim for insufficiency of the evidence, we address it nevertheless. See *Redmon v. Daniel*, 335 Ga. App. 159, 163 (1), n. 5 (779 SE2d 778) (2015) ("a party is free to contend on appeal that the evidence is insufficient to support a verdict even if the party failed to move for a directed verdict, a j.n.o.v., or new trial in the trial court.") (citation and punctuation omitted). In any event, even if Wimpy were to prevail on this issue, he would be entitled to a new trial, and not to a directed verdict in his favor. *Aldworth Co., Inc. v. England*, 281 Ga. 197, 199 (2) (637 SE2d 198) (2006).

existence of a partnership. See *Tidikis*, 274 Ga. App. at 810 (1) ("The existence of a confidential relationship is generally a jury question.").

> A partnership can result from a contract, which may be either express or implied. Factors that indicate the existence of a partnership include a common enterprise, the sharing of risk, the sharing of expenses, the sharing of profits and losses, a joint right of control over the business, and a joint ownership of capital. But the true test to determine whether a partnership has been created is the intention of the parties. The language which the parties used in making the contract is to be looked to in determining what their intention was, which when ascertained will prevail over all other considerations.

(Citation and punctuation omitted.) *Antoskow & Assocs., LLC v. Gregory*, 278 Ga. App. 468, 470 (629 SE2d 1) (2005).

Here, there was sufficient evidence for the jury to find the formation of a partnership. The written partnership agreement regarding the Ellijay project was admitted at trial and published to the jury. Both Martin and Vail testified to their intent to enter into the partnership. And they testified that they would share in the profits and costs of the projects under the partnership. Notably, Wimpy admitted that the parties entered into a partnership initially, but stated that the relationship changed over time. Thus, there was sufficient evidence from which the jury could determine the formation of a partnership. *Antoskow & Assocs., LLC,* 278 Ga. App. at 470. To the extent that there was a conflict in the testimony, it was "for the jury to weigh

6

witness credibility and to resolve such conflicts in the evidence." *Young v. Georgia Agricultural Exposition Auth.*, 318 Ga. App. 244, 249-250 (733 SE2d 529) (2012).

As to the second and third elements of the claim, it is undisputed that Martin was not paid. And there was evidence of the gross profits from the two projects, from which the jury could measure the damages. As such, the evidence was sufficient to establish that Wimpy breached his fiduciary duty to Martin. *Schinazi*, 338 Ga. App. at 798 (3) (a).

(b) Wimpy next contends that the breach of fiduciary duty claim is precluded as a matter of law by the economic loss doctrine.[3] However, Wimpy never raised this argument before the trial court, and it is thus waived. See *Pfeiffer v. Georgia Dept. of Transp.*, 275 Ga. 827, 829 (2) (573 SE2d 389) (2002); *Crippen v. Outback Steakhouse Intl., L.P.*, 321 Ga. App. 167, 170 (1) (741 SE2d 280) (2013) ("Issues presented for the first time on appeal furnish nothing for us to review, for this is a court for correction of errors of law committed by the trial court where proper

_____

[3] The economic loss doctrine "generally provides that a contracting party who suffers purely economic losses must seek his remedy in contract and not in tort." (Citations omitted.) *D.J. Powers Co., Inc. v. Peachtree Playthings, Inc.*, 348 Ga. App. 248, 254 (1) (820 SE2d 217) (2018).

7

exception is taken. One may not abandon an issue in the trial court and on appeal raise questions or issues neither raised nor ruled on by the trial court.") (citation omitted). Accordingly, we do not consider this claim.

2. Wimpy argues that the trial court erred in awarding Martin punitive damages because there was no predicate tort.[4] In light of our ruling in Division 1 (a), this argument fails. See *Crosby v. Kendall*, 247 Ga. App. 843, 848 (2) (b) (545 SE2d 385) (2001) ("It is clear that a breach of a fiduciary duty may warrant the imposition of punitive damages.").

3. Finally, Wimpy challenges the trial court's entry of judgment awarding Martin's attorney fees, contending that there was insufficient evidence to support the amount of the award, and the fees were not based solely on the prevailing claims. Because we agree that the evidence of the amount of attorney fees was insufficient, we reverse the award of attorney fees in this case.

---

[4] Wimpy also contends that there was no basis for the punitive damage award because the jury's underlying award of $90,000 was for one-third of the profits, and was thus an award for contract damages. He cites to no authority for this proposition. Moreover, in light of our ruling in Division (1) (a), Martin was entitled to damages for breach of fiduciary duty. We cannot say that the jury's measure of damages was unreasonable in light of the evidence that the profits of the partnership were intended to be split three ways. See OCGA § 51-12-4.

(a) We will affirm an award of attorney fees under OCGA § 13-6-11 if there is any evidence to support it. *Patton v. Turnage*, 260 Ga. App. 744, 747 (2) (580 SE2d 604) (2003). "But an award of attorney fees is unauthorized if appellee failed to prove the actual costs of the attorney and the reasonableness of those costs." (Citation and punctuation omitted.) *Hagan v. Keyes*, 329 Ga. App. 178, 181 (4) (764 SE2d 423) (2014). As our Supreme Court has explained,

> A court may consider a contingent fee agreement and the amount it would have generated as evidence of usual and customary fees in determining both the reasonableness and the amount of an award of attorney fees. When a party seeks fees based on a contingent fee agreement, however, the party must show that the contingency fee percentage was a usual or customary fee for such case and that the contingency fee was a valid indicator of the value of the professional services rendered. *In addition, the party seeking fees must also introduce evidence of hours, rates, or some other indication of the value of the professional services actually rendered.*

(Citation and punctuation omitted; emphasis supplied.) *Georgia Dept. of Corrections v. Couch*, 295 Ga. 469, 483 (3) (a) (759 SE2d 804) (2014).

During the initial phase of the trial, the jury determined that attorney fees were warranted under OCGA § 13-6-11.[5] In the second phase of the trial, Martin called as

---

[5] OCGA § 13-6-11 provides for the recovery of attorney fees if the defendant "has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense." Wimpy does not challenge the evidence supporting the jury's finding that fees were recoverable under this provision.

9

a witness a seasoned attorney who was not involved in the case, and who opined that a contingency fee based on one-third of the gross damages was reasonable in this case. However, no written contingency agreement was proffered during the second phase of the trial, and neither Martin nor his attorney testified to the terms of any such arrangement. Notably, Martin's attorney did not testify at all, and no other evidence was introduced at trial regarding his hours, rates, or any other indicator of the value of his services. *Georgia Dept. of Corrections*, 295 Ga. at 483 (3) (a); compare *Brock Built, LLC v. Blake*, 316 Ga. App. 710, 715 (2) (b) (730 SE2d 180) (2012) (trial counsel testified to the terms of the contingency agreement and submitted his bills). As such, the evidence was insufficient to support the amount of the attorney fees awarded to Martin, and we are constrained to reverse the award. See *Hughes v. Great Southern Midway, Inc*., 265 Ga. 94, 95 (1) (454 SE2d 130) (1995); *Hagan*, 329 Ga. App. at 182 (4); *Prainito v. Smith*, 315 Ga. App. 791, 795-96 (4) (728 SE2d 309) (2012).

(b) Because we reverse the award of attorney fees, we do not reach Wimpy's remaining argument.

In summary, we affirm the trial court's entry of judgment with regard to Martin's breach of fiduciary duty and punitive damages claims, but reverse the judgment with regard to the award of attorney fees.

*Judgment affirmed in part, and reversed in part. Reese, P. J., and Colvin, J., concur.*