**SECOND DIVISION**
**RICKMAN, C. J.,**
**MILLER, P. J., PIPKIN, J.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**November 1, 2022**

# In the Court of Appeals of Georgia

A22A1040, A22A1041. EDGEWATER HALL ENTERPRISES, LLC v. CITY OF CANTON (two cases).

MILLER, Presiding Judge.

In these two interlocutory appeals, Edgewater Hall Enterprises, LLC appeals from the denial of its motions to set aside two declarations of taking issued by the City of Canton which sought to claim certain easement rights over property owned by Edgewater Hall. In Case No. A22A1040, Edgewater Hall argues that the declaration of taking should have been set aside because (1) the City negotiated in bad faith; (2) the plat attached to the declaration of taking was insufficient; and (3) the declaration of taking was insufficient because it failed to set out the expiration date of a temporary construction easement. In Case No. A22A1041, Edgewater Hall

argues that the trial court erred by concluding that it did not own the property in question and therefore lacked standing to challenge the declaration of taking.

In Case No. A22A1040, we affirm the trial court's order denying Edgewater Hall's petition to set aside the declaration of taking because (1) there was some evidence in the record supporting the trial court's conclusion that the City did not act in bad faith; (2) the plat attached to the declaration sufficiently set out the boundaries of the claimed easement; and (3) Edgewater Hall failed to show that the trial court erred by allowing the City to amend its declaration to address the deficiency in the description of the easement.

In Case No. A22A1041, we conclude that Edgewater Hall was indeed the owner of the claimed property and thus had standing to challenge the City's taking. Accordingly, we vacate the trial court's order denying Edgewater Hall's petition to set aside the declaration of taking and remand for the trial court to address Edgewater Hall's arguments on the merits as to that declaration of taking.

> A trial court may set aside, vacate, or annul a declaration of taking under OCGA § 32-3-11 in the following situations – fraud or bad faith, the improper use of the condemnation powers, the abuse or misuse of the condemnation powers, and such other questions as may properly be

2

raised. We will not reverse the trial court's findings on such issues if those findings are supported by any evidence.

(Citations and punctuation omitted.) *City of Atlanta v. Yusen Air & Sea Svc. Holdings, Inc.*, 263 Ga. App. 82 (1) (587 SE2d 230) (2003).

The record shows that Crescent Farms Canton, LLC owned a 10.961 acre parcel of land that ran along the Etowah River in Cherokee County, Georgia. In October 2008, the City and the Cobb County-Marietta Water Authority acquired a mitigation easement over 1.98 acres of the property that directly abutted the river for purposes of conserving the land in its then-current state. The Mitigation Easement was granted by Crescent Farms in connection with a permit that the City and the Water Authority had received from the U.S. Army Corps of Engineers pursuant to the Clean Water Act. Among other restrictions, the Mitigation Easement required that the property be maintained in its "post mitigation state" by the City and the Water Authority and that the property be "restricted from any further development."

At the time the City and the Water Authority obtained the Mitigation Easement, Crescent Farms' entire property was covered by a security deed to Gilmer County Bank. As part of the easement transaction, Crescent Farms sought and received a release from the bank, which released from the security deed only the easement rights

3

and restrictions being conveyed in the Mitigation Easement. Some time later, Gilmer County Bank foreclosed upon the entire property, and in the process it took the property, less and except:

> All that tract or parcel of land lying and being in Land Lots 158 & 159 of the 14th District, 2nd Section, City of Canton, Cherokee County, Georgia, being that area designated as 100' Mitigation Easement containing 1.98 acres as shown on that certain plat of survey prepared by Cherokee Surveying Co., Inc. and certified by Charles A. Payne, . . . dated September 11, 2007, and last revised on August 17, 2008, . . . The property was subsequently conveyed by Community & Southern Bank (who obtained it from Gilmer County Bank) to Edgewater Hall. The legal description in the deed granting the property to Edgewater Hall conveyed
>
> [s]aid tract of land [that] contains 10.961 Acres . . . LESS & EXCEPT: All that tract or parcel of land lying and being in Land Lots 158 & 159 of the 14th District, 2nd Section, City of Canton, Cherokee County, Georgia, being that area designated as 100' Mitigation Easement containing 1.98 acres as shown on that certain plat of survey prepared by Cherokee Surveying Co., Inc. and certified by Charles A. Payne, . . . dated September 11, 2007, and last revised August 17, 2008 . . . .

In 2020, the City sought to acquire a permanent easement from Edgewater Hall to construct and maintain a gravity sewer main and pedestrian trail through the area

4

covered by the mitigation easement. The City had the property appraised by an independent appraiser who valued the easement rights at $52,700. The City provided Edgewater Hall with a copy of the appraisal report, but the City offered Edgewater Hall only $10,000 for the easement rights, calculating that number based on other settlements it had reached for other easement rights. The parties engaged in negotiations for over a year but could not reach an agreement.

The City filed a condemnation petition and declaration of taking in August 2021, pursuant to OCGA §§ 22-3-140 and 32-3-4, against Crescent Farms and Bank of the Ozarks, as successor in interest to Gilmer County Bank. In the petition, the City sought to claim a permanent easement to construct and maintain a gravity sewer main and pedestrian trail through the area encumbered by the pre-existing easement. The City also maintained that Crescent Farms and Bank of the Ozarks were the owners of the property at issue, and it deposited $3,800, the amount it deemed just and adequate compensation, into the court registry. In accordance with the declaration of taking statute, the trial court entered an order and judgment stating that the easement described in the City's condemnation petition was condemned for the City's use. As part of the judgment, the trial court stated that "nothing herein contained is to be construed as depriving . . . any person having an interest in, title to, or claim against

5

said property of the right to appeal the estimated amount of just compensation . . . or of the right to petition the [c]ourt to vacate and set aside said Declaration of this Judgment."

Edgewater Hall filed a petition to set aside the declaration of taking. According to Edgewater Hall, it took title to Bank of the Ozarks' entire property interest in 2012, and so it contended that it was the "true fee simple owner" of the property underlying the Mitigation Easement. Edgewater Hall argued that (1) the City's taking should be set aside for the City's bad faith in dealing with Edgewater Hall and for deliberately failing to serve it with the petition; (2) the taking was invalid because the declaration of taking lacked a plat showing the lands taken; (3) the City lacked the ability to use the "quick take" procedures of Title 32 of the Georgia Code to condemn land for a public trail; and (4) the taking was invalid because the declaration of taking failed to provide a statement of the estate or interest in the lands taken for public use.

Six weeks after filing the first petition, the City filed a second condemnation action and a declaration of taking for a temporary construction easement for access across the rest of the property to the strip along the river so that it could build the sewer main and walking trail. The City named Edgewater Hall and Bank of the Ozarks as defendants to this petition, and it deposited $2,000, the amount it deemed

6

just and adequate compensation, into the court registry. The trial court again entered an order and judgment stating that the property described in the City's condemnation petition was condemned for the City's use. Edgewater Hall again filed a petition to set aside the declaration of taking, arguing that (1) the City's taking should be set aside for the City's bad faith in dealing with Edgewater Hall; (2) the taking was invalid because the declaration of taking lacked a plat showing the lands taken; and (3) the taking was invalid because the declaration of taking fails to provide a statement of the estate or interest in the lands taken for public use.

Following a hearing, the trial court denied both of Edgewater Hall's petitions. As to the first petition, the trial court found that Edgewater Hall lacked standing to move to set aside the declaration of taking because it was not the owner of record of the property at issue, it was not a condemnee, and it had not filed a motion to intervene to show that it was an interested party who should be added to the action.

As to the second petition, the trial court found that the evidence presented regarding the negotiations prior to the filing of the petition did not rise to the level of fraud, bad faith, improper use of powers, or abuse or misuse of powers necessary to justify setting aside the declaration of taking. The court also found that the plat attached to the declaration of taking was sufficient for the purposes required by

7

OCGA § 32-3-6 (b) (4). As to Edgewater Hall's claim that the declaration of taking did not contain an adequate statement of the estate or interest taken, the court found that, even if there was an error in the metes and bounds description and in failing to disclose the expiration date of the temporary easement rights taken, this error did not cause harm to Edgewater Hall because the expiration date was contained elsewhere in the petition. The court determined that these errors, as well as the erroneous reference to "fee-simple" in the order and judgment signed in this case, are amendable by the City and are not grounds for setting aside the declaration of taking. Thus, the trial court denied Edgewater Hall's petition to set aside the declaration of taking and ordered the City to submit an amended petition for condemnation and declaration of taking correcting any errors or inconsistencies in the description of the property interests taken.

The trial court certified both of its decisions for immediate review, and we granted both of the resultant applications for interlocutory appeal. These appeals followed.

*Case No. A22A1040*

1. In the appeal involving the declaration of taking for the temporary construction easement, Edgewater Hall first argues that the trial court erred by

8

concluding that the actions of the City during its negotiations did not rise to the level of bad faith to justify setting aside the declaration of taking. We conclude that there is at least some evidence in the record to support the trial court's conclusion on this issue.

In a proceeding regarding issues unrelated to the value of just compensation, OCGA § 32-3-11 (b) gives a trial court the authority to set aside, vacate and annul a declaration of taking in situations of fraud or bad faith, the improper use of condemnation powers, the abuse or misuse of condemnation powers, and such other questions as may properly be raised. *Habersham Downs Homeowners' Assn. v. Dept. of Transp.*, 212 Ga. App. 686, 687 (442 SE2d 868) (1994). Similarly, the Georgia Code directs that "all condemnations and potential condemnations shall, to the greatest extent practicable, be guided by the following policies and practices: . . . [i]n no event shall the condemnor act in bad faith in order to compel an agreement on the price to be paid for the property[.]" OCGA § 22-1-9 (7).

"[T]he burden for establishing bad faith which will cause courts to interfere with the discretion of a condemning authority is a high one - conscious wrongdoing motivated by improper interest or by ill will or fraud." (Citation and punctuation omitted.) *Morgan County v. Gay*, 352 Ga. App. 555, 561 (1) (a) (ii) (834 SE2d 576)

9

(2019). A trial court's finding on the issue of bad faith will be upheld if there is any evidence to support it. See *Dept. of Transp. v. Bunn*, 268 Ga. App. 712, 716-717 (2) (603 SE2d 2) (2004) (reviewing a trial court's conclusion that the DOT negotiated in bad faith under the any evidence standard). Generally, the burden of proving bad faith of the condemnor rests upon the condemnee. See *West v. Dept. of Transp.*, 176 Ga. App. 806 (1) (338 SE2d 45) (1985).

In Edgewater Hall's view, the City acted in bad faith by intentionally misleading the trial court and creating ambiguity in Edgewater Hall's status as the owner of the property. As specific acts, Edgewater Hall asserts that the City mislabeled the property in the metes and bounds description and on the relevant plat, divided its taking into two cases and deliberately omitted Edgewater Hall from the case where a larger amount of money at stake, and failed to recognize Edgewater Hall's status as the owner despite the fact that the City had been conducting ongoing negotiations with it, all in an attempt to hide that Edgewater Hall was not agreeing to the City's lowball offers that were far below the appraised value of the easements.

However, there is at least some evidence in the record to support the trial court's conclusion that the City did not negotiate in bad faith. The record shows that the City was negotiating with Edgewater Hall under the assumption that it was the

owner of the land underlying the easement until it conducted an independent title search of the property and the underlying deeds. The City's title search led to the ultimately erroneous (as discussed in Case No. A22A1041, infra) conclusion that Edgewater Hall was not the owner of the property underlying the mitigation easement, and the City changed its stance based on that conclusion. Thus, there is some evidence to show that the City's change in position (and subsequent filing of an action without naming Edgewater Hall as a party) was not "conscious wrongdoing motivated by improper interest or by ill will or fraud." (Citation and punctuation omitted.) *Morgan County*, supra, 352 Ga. App. at 561 (1) (a) (ii).

Additionally, to the extent Edgewater Hall relies on the City's low offer to show bad faith, the record shows that, although the City offered $10,000 when its appraisal set a valuation of $52,700 for both the permanent easement and the temporary construction easement, the City had a proper justification for offering a lower amount in that the amount the City offered was based on a comparable settlement the City had reached with the owner of a different property. Although Edgewater Hall argues that the City's offer violated OCGA § 22-1-9 (3), which states that "[i]n no event shall [a condemnor's offer] be less than the condemning authority's independent appraisal of the fair market value of such property[,]" that

11

code section by its terms applies only "[b]efore the initiation of negotiations for *fee simple interest* for real property." (Emphasis supplied.) OCGA § 22-1-9 (3). Thus, there was at least some evidence in the record such that the trial court was entitled to conclude that the City's actions did not arise to the level of "conscious wrongdoing motivated by improper interest or fraud" that would overturn a condemnation. Compare *Bunn*, 268 Ga. App. at 716-717 (2) (upholding trial court's finding of bad faith where the DOT gave assurances during negotiations that access to a state highway would be provided, when it intended to make the highway limited-access).

We therefore affirm the trial court's conclusion that the City did not negotiate in bad faith so as to warrant setting aside the condemnation.

2. Edgewater Hall also argues that the trial court erred by holding that the plat the City attached to the declaration of taking was sufficient under the taking statute. We disagree and conclude that the plat was sufficient.

The taking statute provides that a declaration "shall contain or have annexed thereto [a] plat showing the lands taken[.]" OCGA § 32-3-6 (b) (4). While the declaration of taking statute lists no further requirements as to what constitutes a "plat showing the lands taken," see OCGA § 32-3-6 (b), Edgewater Hall directs us to the requirements of OCGA § 15-6-67 and contends that those requirements also apply to

12

the plats accompanying a declaration of taking. It then argues that the City's plat was deficient under that statute because (1) it erroneously described the lands owned by Edgewater Hall as being owned by Crescent Farms; (2) it was a mere sketch that failed to contain any points delineated by metes and bounds; and (3) the plat failed to contain a certification or signature from a surveyor or engineer.

OCGA § 15-6-67, however, "deals only with recordation of plats," and nothing in that section "refers to the admissibility of plats" for any other purpose. *Purcell v. C. Goldstein & Sons, Inc.*, 264 Ga. 443, 444 (1) (448 SE2d 174) (1994). Indeed, the Georgia Code is specific that failure of a plat to meet the requirements of OCGA § 15-6-67 "shall not, in and of itself, affect or invalidate any legal description or *legal instrument* based on such plat." (Emphasis supplied.) OCGA § 15-6-69 (a). Thus, because the declaration of taking at issue is such a "legal instrument," see *Williams v. Dekalb County*, ___ Ga. App. ___ (2) (a) (ii) (C) (875 SE2d 865) (2022) (noting that a legal instrument is a "legal document that defines rights, duties, entitlements, or liabilities, such as a statute, contract, will, promissory note, or share certificate.") (citation and punctuation omitted), we reject Edgewater Hall's attempt to read the requirements of OCGA § 15-6-67 into the declaration of taking statute.

13

We further conclude that the plat was sufficient to set out the boundaries of the temporary construction easement. While Edgewater Hall argues that the plat does not appraise it of the lands to be taken because it does not provide any specific metes and bounds, the plat depicts Edgewater Hall's property and provides measurements setting out that the easement extends 60 feet from the edge of the existing mitigation easement, which is a known landmark. Thus, the plat sets out sufficient information from which the boundaries of the claimed easement can be calculated exactly. Compare *Ga. 400 Indus. Park, Inc. v. Dept. of Transp.*, 274 Ga. App. 153, 155-156 (1) (616 SE2d 903) (2005) (declaration of taking's description of a temporary work easement was insufficient when it did not provide the width of the easement and left the exact boundaries unspecified and to be set later by the construction crew). We therefore conclude that the plat attached to the declaration of taking complied with OCGA § 32-3-6 (b) (4).

3. Finally, Edgewater Hall argues that the trial court erred by holding that the failure of the declaration of taking to disclose the expiration date of the temporary easement rights taken has not caused it harm because the expiration date is contained elsewhere in the petition. Edgewater Hall also appears to argue that the trial court erred in ordering the City to amend the declaration of taking rather than dismissing

14

it outright because the declaration of taking itself is what delineates the property rights, not the petition. A trial court, however, is within its right to order a condemnor to amend a declaration of taking when its description of the property to be taken is faulty. See *Dorsey*, supra, 248 Ga. at 37 (In the event the declaration failed to adequately describe the property to be taken, "it was proper for the trial court to order an amendment rather than setting aside the original declaration."). While Edgewater Hall argues that a trial court was not required to order an amendment, it has failed to show that the trial court erred by choosing that option in this case.[1]

Accordingly, we affirm the trial court's order denying Edgewater Hall's petition to set aside the declaration of taking for the temporary construction easement.

*Case No. A22A1041*

4. In its appeal from the denial of its petition to set aside the taking of the permanent easement, Edgewater Hall argues, among other things, that the trial court

---

[1] Edgewater Hall also argues that the City has already begun construction notwithstanding the fact that the declaration of taking remains deficient and, thus, the easements have not yet transferred to the City's possession. See *Dorsey*, supra, 248 Ga. at 37 ("[A] declaration of taking which does not conform to the dictates of [the taking statute] cannot vest title to the land in the condemnor. We also agree that a later amendment cannot relate back . . . so as to cure the defect and affect a vesting of title as of the date the original declaration petition was filed."). Such concerns, however, are beyond the scope of this appeal to address.

15

erred in concluding that it is not the owner of the property and therefore lacked standing to petition to set aside the declaration of taking. Edgewater Hall points out that it pays taxes assessed by the City and Cherokee County on the entire 10.961-acre tract and contends that it holds title to the property by virtue of its deed. We agree that, under the terms of the deed, Edgewater Hall is the owner of the underlying property and therefore had standing to challenge the declaration of taking.

When bringing a condemnation proceeding under OCGA § 32-3-1 et seq., the condemning government entity is required to file a petition and declaration of taking, which is self-executing in nature. *Eagle's Landing Christian Church v. Henry County*, 308 Ga. App. 416, 417 (708 SE2d 23) (2011). Because a declaration of taking automatically transfers interest in land, "to ensure due process to the property owner, the statute must be strictly conformed to by the condemning body." *Dorsey v. Dept. of Transp.*, 248 Ga. 34, 37 (279 SE2d 707) (1981). And "a declaration of taking which does not conform to the dictates of [OCGA § 32-3-1, et seq.] cannot vest title to the land in the condemnor." Id. Among other requirements, a petition accompanying a declaration of taking must "set forth [t]he names and residences of the persons whose property or interests are to be taken or otherwise affected, so far as known." OCGA § 32-3-5 (a) (3).

16

To determine whether Edgewater Hall was the property owner, and therefore whether the City should have named it as a party in the petition, we must look to the relevant deed.

> The construction of a deed which is unambiguous is to be handled like any other contract, that is, it is a matter for determination by the court, and its meaning and effect are questions of law for the court. The construction of a contract involves three steps: first, the court must determine whether the language therein is clear and unambiguous, and if it is, the contract is to be enforced according to its clear terms; the contract alone is looked to for its meaning; next, if the contract is ambiguous in some respect, the court must apply the rules of contract construction to resolve the ambiguity; and finally, if the ambiguity remains after applying the rules of construction, the issue of what the ambiguous language means and what the parties intended must be resolved by the trier of fact. . . . In construing a deed, the paramount consideration and overriding goal is to ascertain and give effect to the intent of the parties. And, in general, the parties' intent is to be determined from the deed's text alone, and extrinsic evidence will be used to interpret the deed only when its text is so ambiguous that its meaning cannot be determined through application of the ordinary rules of textual construction. Furthermore, the deed must be examined in its entirety in order to determine the parties' intent and to be given a construction which is consistent with reason and common sense.

(Citations omitted.) *Atlanta Dev. Auth. v. Clark Atlanta Univ., Inc.*, 298 Ga. 575, 579-581 (III) (784 SE2d 353) (2016).

The relevant language addressing the 1.98-acre Mitigation Easement in the quitclaim deed from Community & Southern Bank to Edgewater Hall states:

> Said tract of land contains 10.961 Acres . . . LESS & EXCEPT: All that tract or parcel of land lying and being in Land Lots 158 & 159 of the 14th District, 2nd Section, City of Canton, Cherokee County, Georgia, *being that area designated as 100' Mitigation Easement* containing 1.98 acres as shown on that certain plat of survey prepared by Cherokee Surveying Co., Inc. and certified by Charles A. Payne, . . . dated September 11, 2007, and last revised August 17, 2008 . . . (Emphasis supplied.) Reading this "less and except" language in its entirety, it is clear that it refers explicitly to the Mitigation Easement, and not the fee simple entirety of the 1.98-acre tract underlying the Easement.[2] Nothing in this description says that it also excepts the *fee simple* underlying the easement or otherwise refers to the land underlying the easement. Thus, contrary to the City's argument, the land underlying the mitigation easement was deeded to Edgewater Hall. Edgewater Hall is therefore the correct owner of the land underlying the easement.

---

[2] We note that this description uses the same exact language as the initial deed upon Gilmer Bank's foreclosure of the property, and it is the language used to describe the initial easement when it was taken by the Water Authority.

18

Thus, as an owner of the property at issue, Edgewater Hall was entitled to be named in the petition under OCGA § 32-3-5 (a) (3) and served with the petition under OCGA § 32-3-8 (a). Additionally, OCGA § 32-3-17 (a) provides in relevant part that "[a]ny such person claiming an interest or any rights therein may file appropriate pleadings *or* intervention at any time before verdict and be fully heard thereon." (emphasis added). As the owner of the property seeking to be condemned, Edgewater Hall is clearly a "person claiming an interest or any rights therein," and thus it was entitled to file an "appropriate pleading" challenging the condemnation notwithstanding the City's failure to name it as a party and its failure to intervene. See *Robinson v. Dept. of Transp.*, 185 Ga. App. 597, 600 (364 SE2d 884) (1988) ("OCGA § 32-3-17 provides in pertinent part that no provision of the condemnation chapter shall exclude any person by way of default from making known his rights or claims in the property or interests or in the fund arising therefrom. Such claimant should file such pleading or intervention before verdict and be fully heard thereon.").

Thus, we conclude that Edgewater Hall had standing to file a petition seeking to set aside the declaration of taking. We therefore vacate the trial court's order

19

denying its petition and remand for the trial court to address Edgewater Hall's petition on the merits.[3]

*Judgment affirmed in Case No. A22A1040. Judgment vacated and case remanded in Case No. A22A1041. Rickman, C. J., and Pipkin, J., concur.*

---

[3] In light of our conclusion on this issue, we do not reach Edgewater Hall's remaining claims of error.